GARDEN WATER CORPORATION, Plaintiff, Cross-defendant and Appellant, v. JOE FAMBROUGH, Defendant, Cross-complainant and Respondent.

Deadrich, Bates & Lund and Jack E. Lund for Plaintiff, Cross-defendant and Appellant.

Sims & Solomon and Gabriel W. Solomon for Defendant, Cross-complainant and Respondent.

STONE, J.—This is an appeal from a judgment for the value of a water system taken by inverse condemnation. Respondent and his associates developed and subdivided a tract of land in Kern County, including construction of a domestic water system to serve approximately 96 homes in tracts 2394 and 2427. Prior to the commencement of this action, respondent acquired the interests of his associates.

On November 1, 1961, while appellant, Garden Water Corporation, was negotiating to purchase the system it took possession of the property. Although no agreement had been reached, appellant obtained a certificate of convenience and necessity from the Public Utilities Commission on January 9, 1962, authorizing use of the water system to supply tracts 2394 and 2427. Thereafter appellant supplied water to some 90 residences in the two tracts, maintaining the system and retaining all income. The parties discussed terms of sale from time to time, but they were unable to agree upon a sale price.

On January 5, 1965, appellant filed a quiet title action against respondent, who by cross-complaint asked judgment for value of the water system with interest from the time appellant took possession. Respondent also sought an injunction prohibiting appellant from further use of the system until payment of the value thereof.

The trial court found against appellant on its quiet title action, and in favor of respondent on his cause of action for value of the property on the theory of inverse condemnation. The trial court pointed out that an injunction could hardly issue against use of the system since appellant, a public utility, is presently servicing some 90 houses under a certificate of necessity and convenience issued by the Public Utilities Commission.

Appellant does not purport to have established its right to a decree quieting title. The thrust of its appeal is against the award of damages, upon the ground that this is not a proper case of inverse condemnation and because the statute of limitations bars recovery. Appellant also contends the court erroneously excluded evidence offered by way of impeachment to show that respondent once offered to sell the water system to a prospective purchaser for less than the amount of the judgment, and that it was error to allow prejudgment interest from the date of the taking.

The trial court properly concluded that an injunction should not issue. Where property has been taken for public use without any provision being made for compensation, an unqualified injunction may be refused if a public use has intervened. (*Beals* v. *City of Los Angeles,* 23 Cal.2d 381, 388 [144 P.2d 839]; *Frustuck* v. *City of Fairfax,* 212 Cal.App.2d 345, 370 [28 Cal.Rptr. 357].) Here, the property was dedicated to a public use from the outset. The operation of the water system by appellant as a public utility under a certificate of necessity and convenience from the Public Utilities Commission is conclusive on this point.

Respondent's remedy was for damages resulting from the taking, under the doctrine of inverse condemnation. This remedy is proper when a public use has attached to property taken without compensation. (*Tulare Irr. Dist.* v. *Lindsay-Strathmore Irr. Dist.,* 3 Cal.2d 489, 533 [45 P.2d 972]; *Beals* v. *City of Los Angeles, supra; Frustuck* v. *City of Fairfax, supra.*) The governing principle is expressed in *Cothran* v. *San Jose Water Works,* 58 Cal.2d 608, at page 614 [25 Cal. Rptr. 569, 375 P.2d 449]: "The doctrine of inverse condemna-

tion rests upon the theory that after property has been devoted to a public use by a defendant so that it would seriously interfere with the service furnished by the defendant to the public if such use is discontinued public policy dictates that such use should not be discontinued and the property owner's only relief in such a situation is an action for the value of the property taken and the damages to his remaining property by way of inverse condemnation. [Citations.] To make this doctrine applicable, however, the property must in fact have been devoted to a public use by the defendant to the extent that the public interest would suffer by the discontinuance of such use.''

Having concluded that the trial court correctly determined the applicability of inverse condemnation, we turn to appellant's contentions that the cause of action is barred by the statute of limitations. If the water system is deemed to be personal property and appellant's appropriation a conversion of personal property, respondent would be barred by the three-year limitation under subdivision 3 of section 338 of the Code of Civil Procedure. Therefore the first question is whether the water system is to be treated as real or personal property. Even if treated as real property, there is the further determination whether there was a taking under the five-year statute or simply a trespass upon real property under the three-year provision of section 338, subdivision 2, of the Code of Civil Procedure.

The trial court found the water system to be real property and, we think, correctly so, as the easements for the water mains, connecting lines and lateral lines come within the rationale of Civil Code section 662.[1] It is impractical, if not impossible, to separate the water pipes buried under the ground pursuant to the easement, from the easement itself. It is also quite clear that the parties intended the pipelines and the easements for the pipelines to be treated as a unit. Under very similar circumstances the Supreme Court held, in *Robinson* v. *City of Glendale*, 182 Cal. 211, at page 213 [187 P. 741], that ''the pipe-lines and the easements therefor, . . . are real estate and not personal property.'' (See *Southern Pac. Co.* v. *Spring Valley Water Co.*, 173 Cal. 291, 296 [159 P. 865, L.R.A. 1917E 680] ; *Trask* v. *Moore*, 24 Cal.2d 365, 368 [149 P.2d 854].)

---

[1] ''A thing is deemed to be incidental or appurtenant to land when it is by right used with the land for its benefit, as in the case of a way, a watercourse, or of a passage for light, air, or heat from or across the land of another.'' (Civ. Code, § 662.)

■ Treating the water system as real property, that is, as an incorporeal hereditament, disposes of appellant's argument that the statute of limitations applicable to a conversion of personal property applies, but there remains appellant's contention that the cross-complaint states a cause of action "for trespass upon or injury to real property," within the three-year limitation of subdivision 2 of section 338. Precisely this question was raised in *Frustuck* v. *City of Fairfax, supra*, 212 Cal.App.2d 345. The court concluded, at page 374: ". . . we are satisfied that section 338, subdivision 2, applies to acts of trespass or injury to property which do not involve the taking or damaging of private property for a public use pursuant to article I, section 14 of the California Constitution." The court reasoned that ". . . acts constituting inverse condemnation amount to more than those of simple trespass. The former involve the taking or damaging of real property for a public use. When an act of trespass amounts to a taking or damaging for a public use it is more than a mere trespass *on* an interest in land, but it takes from the owner of the land something necessary and essential to the use and enjoyment of the property and thus results in the taking away of a valuable property right." (P. 374.)

In light of the foregoing persuasive analysis of the distinction between trespass and inverse condemnation resulting from the taking of real property, we hold that the trial court here correctly applied the five-year statute of limitations to respondent's cross-complaint for damages resulting from inverse condemnation.

■ Appellant sought to impeach respondent's testimony concerning the value of the property by three documents: a letter from an attorney on behalf of his client submitting terms and conditions for an offer to purchase the water system, an assignment by respondent to the attorney, and a bill of sale. The court refused to admit the documents upon the ground respondent had not testified to the value of the property so that the proffered evidence was improper impeachment. The court was in error, in that respondent did testify as to cost price of the facilities in place, which was some evidence of value. However, as the court also pointed out, negotiations between the proposed purchaser and respondent were never consummated; the offer setting forth a sale price was contained in the attorney's letter to respondent, it was not respondent's offer. Insofar as the record reflects, the bill of sale and the assignment, although signed, were never delivered.

Thus the documents do not constitute a statement of value by respondent that would impeach his testimony concerning the cost of the improvements in place. (*People* ex rel. *Dept. of Public Works* v. *Graziadio*, 231 Cal.App.2d 525, 532 [36 Cal. Rptr. 263].)

Appellant argues that the evidence was not offered to prove value or the truth of the inference, but to impeach respondent. Even if admissible for this limited purpose, any error in excluding the documents does not justify a reversal in the light of the entire record. That is to say, if the three proffered exhibits, marked for identification, had been received in evidence, their impact upon respondent's credibility would not have impelled a rejection of his testimony. We do not believe a different judgment would have resulted had the documents been received in evidence. (Cal. Const., art. VI, § 4½.)

Finally, appellant assigns as error the allowance of interest from the date of taking. We cannot agree that because the parties could not arrive at a sale price the allowance of interest from the time appellant took possession of the property is inequitable. Appellant had use of the property from the date of taking, it collected and retained all revenues, and paid nothing to respondent. In any event, the question is set to rest in *Youngblood* v. *Los Angeles County Flood Control Dist.*, 56 Cal.2d 603 [15 Cal.Rptr. 904, 364 P.2d 840], where an inverse condemner contended, as does appellant here, that because damages were unliquidated, interest on the judgment should run only from the date of entry of the judgment. The Supreme Court held, at page 611, that where "private property is taken or damaged entitling an owner to a recovery in inverse condemnation, he is further entitled, as in an action for condemnation, to his interest at the legal rate on the amount of damages suffered and that such interest should be computed from the time of injury, and not merely from time of entry of the judgment."

The judgment is affirmed.

Conley, P. J., and McMurray, J. pro. tem.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.